# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOT WINC, L.L.C.,<br><br>               Plaintiff,<br>  v.<br>RSM McGLADREY FINANCIAL PROCESS OUTSOURCING, LLC, and DOES 1 to 50, inclusive,<br><br>               Defendants.<br>RSM McGLADREY FINANCIAL PROCESS OUTSOURCING, LLC,<br><br>               Counterclaimant,<br>  v.<br>HOOT WINC, LLC,<br><br>               Counterdefendant. | CASE NO. 08cv1559 BTM(WMc)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendant RSM McGladrey Financial Process Outsourcing, LLC ("Defendant" or "RSM") has filed a motion for partial summary judgment based on a limitation-of-liability clause contained in the contract between the parties. For the reasons discussed below, Defendant's motion is **GRANTED IN PART AND DENIED IN PART.**

## I. BACKGROUND

Plaintiff Hoot Winc, LLC, ("Plaintiff" or "Hoot Winc") is a Kansas limited liability

company which owns 23 Hooters restaurants, a casino and gaming operations in Spokane, and a management company. (Def.'s Undisputed Fact No. 6.)

On December 28, 2005, Plaintiff and Defendant RSM McGladrey Financial Process Outsourcing, LLC entered into a service agreement ("Service Agreement") pursuant to which Defendant agreed to provide an array of business support services to Plaintiff, including but not limited to preparation of financial statements, maintaining and processing payroll, invoice entry, invoice coding, weekly accounts payable and cash requirements, check preparation and mailing, processing of employee expense reports, preparation of 1099 forms, daily cash deposit verification, filing of tax returns, and making tax payments. (Service Agreement (Ex. A to Durone Decl. dated 4/9/09).)

The Service Agreement includes the following limitation-of-liability provision:

> The maximum liability of RSM for damages whether based on breach of warranty or other contract, negligence, strict liability, other tort, breach of statute or governmental rule, or any other legal or equitable theory shall not exceed one month/period's fees paid.

(Service Agreement, ¶ 6.5.) The Service Agreement also provides, "[T]he laws of the State of Minnesota shall govern This Agreement, without reference to such state's conflicts of laws provisions."

In exchange for Defendant's business support services, Plaintiff agreed to pay Defendant a fee of $595 per restaurant per period plus an additional $350 per period for accounting services provided to Hoot Winc itself. (Pl.'s Undisputed Fact No. 12.) The total per-period fees amounted to $14,035. (Id.)

Plaintiff claims that Defendant failed to properly perform the contracted services. According to Plaintiff, throughout 2006, Defendant never delivered an accurate financial statement. Plaintiff ultimately terminated the Services Agreement in December, 2006 (Spitcaufsky Decl. ¶ 15.)

Plaintiff's First Amended Complaint alleges the following causes of action: (1) professional negligence; (2) breach of contract; (3) fraud; and (4) negligent misrepresentation.

In an order filed on August 10, 2009, the Court granted Defendant's motion for partial

summary judgment on Count One of the FAC to the extent that it is based on California law. The Court held that pursuant to the choice-of-law provision in the Service Agreement, Minnesota law governed Plaintiff's claims and Plaintiff was therefore precluded from pursuing a professional negligence claim under California law.

## II. DISCUSSION

Defendant seeks partial summary judgment with respect to Plaintiff's claims for professional negligence, breach of contract, and negligent misrepresentation. Defendant contends that Plaintiff's damages in connection with these claims are limited by the Service Agreement's limitation-of-liability clause. As discussed below, the Court finds that the limitation-of-liability clause is enforceable with respect to Plaintiff's breach of contract claim, negligent misrepresentation claim, and professional negligence claim to the extent it is premised on ordinary negligence. However, the clause does not operate to limit Plaintiff's damages in connection with its claim for willful or wanton professional negligence.

Under Minnesota law, if an exculpatory clause "is either ambiguous in scope or purports to release the benefited party from liability for intentional, willful or wanton acts, it will not be enforced." Schlobohm v. Spa Petite, Inc., 326 N.W.2d 920, 923 (Minn. 1982). In determining whether an exculpatory clause should be enforced, Minnesota courts apply a two-prong test and consider: (1) whether there was a disparity of bargaining power between the parties; and (2) the types of services being offered or provided (taking into consideration whether it is a public or essential service). Id. at 923.

Plaintiff argues that the language of the limitation-of-liability clause is broad enough to encompass intentional, willful, or wanton acts and that, therefore, the entire clause should be invalidated. However, Defendant seeks to enforce the clause as to Plaintiff's claims for breach of contract and ordinary negligence only. These claims clearly fall within the scope of the exculpatory clause. In Anderson v. McOskar Enterprises, Inc., 712 N.W. 2d 796 (Minn. App. 2006), the court held that the limitation-of-liability clause would be enforced with respect to the defendant's alleged acts of negligence because the parties expressed a clear intention

to release liability for negligence. The fact that the release also arguably included broader language that was ambiguous in scope did not invalidate the release of negligence claims:

> The arguably ambiguous portion of this release is not at issue. It would subvert the parties' manifested intent to effect a release of liability for negligence if the broader language were given precedence. That would not be the better rule of law: "A better interpretation of the law is that any 'term' in a contract which attempts to exempt a party from liability for gross negligence or wanton conduct is unenforceable, not the entire [contract]." Wolfgang v. Mid-American Motorsports, Inc., 898 F.Supp. 783, 788 (D. Kan. 1995).

Id. at 801. See also Honeywell, Inc. v. Ruby Tuesday, Inc., 43 F. Supp. 2d 1074 (D. Minn. 1999) (enforcing exculpatory clause with respect to allegations of negligence even though clause also included broader language that could be interpreted as extending to intentional, willful, or wanton acts).[1]

The Court agrees with the reasoning of Anderson. Accordingly, the Court holds that to the extent the exculpatory clause in the Service Agreement releases liability for *ordinary* negligence and breach of contract,[2] it is enforceable.

The Court rejects Plaintiff's argument that the exculpatory clause should not be enforced because Defendant provides a "public" or "essential" service. In determining whether the type of service being offered is a public or essential service, courts consider whether it is the type of service generally thought suitable for public regulation. Schlobohm, 326 N.W.2d at 925. "Types of services thought to be subject to public regulation have included common carriers, hospitals and doctors, public utilities, innkeepers, public

---

[1] In Nimis v. St. Paul Turners, 521 N.W.2d 54 (Minn. App. 1994), the court indicated that the exculpatory clause at issue was unenforceable in its entirety because in addition to releasing liability for negligence it included ambiguous language that arguably extended to intentional acts. However, the Nimi court ultimately held that the release had expired at the time of the plaintiff's injury and, therefore, the plaintiff was not subject to any waiver. Therefore, the Nimi court's statements regarding the unenforceability of the exculpatory clause are dicta.

[2] Plaintiff argues that the limitation-of-liability clause is an unenforceable liquidated damages clause. This argument lacks merit. A cap on damages is not the same thing as "liquidated damages," and does not raise the same concerns regarding predetermined penalties. See Morgan Co. v. Minnesota Mining & Mf'g, 246 N.W.2d 443, 447 (Minn. 1976) ("Such a contract [to limit liability in damages] does not purport to make an estimate of the harm caused by a breach. Nor is its purpose to operate in terrorem to induce performance.")

warehousemen, employers and services involving extra-hazardous activities." Id. However, the fact that a defendant's services are subject to regulation is not enough in itself to establish that the business provides a necessary or public service. See, e.g., Arrowhead Elec. Co-op, Inc. v. LTV Steel Min. Co., 568 N.W. 2d 875, 879 (Min. App. 1997) (holding that even though defendant's maintenance of ash heap was subject to regulation by the Minnesota Pollution Control Agency, the parties' contract did not touch upon public interests); Malecha v. St. Croix Valley Skydiving Club, Inc., 392 N.W.2d 727 (Min. App. 1986) (concluding that the presence of federal regulations of parachute jumping did not render void an exculpatory clause in a skydiving club's agreement). Courts must also consider whether the defendant "offered services of great importance to the public, which were a practical necessity for some members of the public." Schlobohm, 326 N.W.2d at 926.

Although there are Minnesota regulations governing the profession of accounting, the Court is not convinced that Defendant in this case was providing services of great importance to the public or essential services. The Service Agreement is a contract between private parties for business support services that do not affect the public well-being. There may be instances – e.g., where a defendant provides auditing services for a publicly-traded company – where accounting services may be deemed "public" or "essential." However, under the facts of this case, enforcement of the limitation-of-liability clause will not contravene public policy. The Court declines to certify the question of the clause's enforceability to the Minnesota Supreme Court because existing case law gives the Court sufficient guidance to decide the issue.

The Court holds that the limitation-of-liability clause applies to Plaintiff's professional negligence claim *to the extent it alleges ordinary negligence* in addition to Plaintiff's breach of contract claim and negligent misrepresentation claim. The limitation-of-liability clause is not enforceable to the extent Plaintiff alleges willful and wanton professional negligence. See Honeywell, 43 F. Supp. 2d at 1080 (holding that exculpatory clause did not apply to claim that defendant was willfully negligent in failing to perform its duties under the contract). Willful and wanton negligence is the failure to exercise ordinary care after discovering a

person or property in a position of peril. Bryant v. N. Pac. Ry. Co., 23 N.W.2d 174, 179 (Minn. 1946). In the FAC, Plaintiff alleges that Defendant recklessly and wantonly breached its contractual duties to Plaintiff. (FAC, ¶¶ 2, 9, 12.) Although the FAC is short on facts supporting Plaintiff's allegations regarding willful and wanton negligence, Defendant did not move to dismiss on this ground. Accordingly, Plaintiff may proceed with its claim for willful and wanton professional negligence, and such claim is not subject to the limitation-of-liability clause.

Plaintiff argues that its negligent misrepresentation claim, like its professional negligence claim, alleges willful and wanton negligence and that, therefore, the limitation-of-liability clause does not apply. However, Plaintiff erroneously lumps its professional negligence and negligent misrepresentation claims together. In fact, the FAC does not allege willfully negligent misrepresentation. Plaintiff's Fourth Cause of Action alleges only that Defendant made negligent representations, orally and in writing, regarding its qualifications and the services it would provide. (FAC ¶¶ 24-29.)[3] Because the Fourth Cause of Action does not allege anything more than ordinary negligent misrepresentation, there is no reason not to enforce the limitation-of-liability clause as to this claim in its entirety.

In sum, the limitation-of-liability clause is enforceable with respect to Plaintiff's breach of contract claim, negligent representation claim, and professional negligence claim to the extent that it alleges ordinary negligence. The limitation-of-liability clause does not limit the amount of damages recoverable on Plaintiff's claim for willful and wanton professional negligence.

---

[3] In addition to fraud and negligent misrepresentation, it appears that Minnesota law recognizes a cause of action for "reckless misrepresentation." Zutz v. Case Corp., 422 F.3d 764 (8th Cir. 2005). In contrast to deceit, which involves an intent to deceive, reckless misrepresentation occurs "when the representer asserts a fact as of his own knowledge without knowing whether it is true or false." Florenzano v. Olson, 387 N.W.2d 168, 177 n. 2 (Minn. 1986) (Simonett, J., concurring specially). A misrepresentation is made negligently "when the misrepresenter has not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated." Id. at 174. It is unclear whether Plaintiff intends to assert a claim for reckless misrepresentation in addition to its claim for fraud and negligent misrepresentation. The FAC makes no allegations regarding reckless misrepresentation. If Plaintiff wishes to assert a claim for reckless misrepresentation, Plaintiff can bring a motion for leave to amend.

### III. CONCLUSION

For the reasons discussed above, Defendant's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The Service Agreement's limitation-of-liability clause is enforceable with respect to Plaintiff's breach of contract claim, negligent representation claim, and professional negligence claim to the extent that it alleges ordinary negligence. The limitation-of-liability clause does not limit the amount of damages recoverable on Plaintiff's claim for willful and wanton professional negligence.

**IT IS SO ORDERED.**

DATED: November 12, 2009

Honorable Barry Ted Moskowitz
United States District Judge