# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOT WINC, L.L.C., | CASE NO. 08cv1559 BTM(WMc) |
| Plaintiff, | **ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT AS A MATTER OF LAW PRECLUDING PLAINTIFF FROM SEEKING OR RECOVERING DAMAGES ALLEGEDLY SUSTAINED BY NONPARTY ENTITIES** |
| v. | |
| RSM McGLADREY FINANCIAL PROCESS OUTSOURCING, LLC, and DOES 1 to 50, inclusive, | |
| Defendants. | |
| RSM McGLADREY FINANCIAL PROCESS OUTSOURCING, LLC, | |
| Counterclaimant, | |
| v. | |
| HOOT WINC, LLC, | |
| Counterdefendant. | |

Defendant has filed a motion for partial summary judgment as a matter of law precluding Plaintiff from seeking or recovering damages allegedly sustained by nonparty entities.  For the reasons discussed below, Defendant's motion is **DENIED**.

///

///

## I. FACTUAL BACKGROUND

Plaintiff Hoot Winc, LLC, is a management company that provides business services to a group of Hooters restaurants and a casino gaming operation in Spokane, Washington. In December 2005, Plaintiff and Defendant entered into a Services Agreement ("Agreement") (Def. Ex. A) whereby Defendant agreed to provide an array of business support services to Plaintiff and the Hooters restaurants, including but not limited to preparation of financial statements, maintaining and processing payroll, invoice entry, invoice coding, weekly accounts payable and cash requirements, check preparation and mailing, processing of employee expense reports, preparation of 1099 forms, daily cash deposit verification, filing of tax returns, and making tax payments.

Plaintiff claims that Defendant ineptly provided the contracted services, repeatedly failed to adhere to the requisite standard of care, failed to remedy deficiencies in its performance despite Plaintiff's reasonable requests, and recklessly and willfully breached the contractual and statutory duties owed to Plaintiff. Plaintiff terminated the Services Agreement in December, 2006.

In its Second Amended Complaint, Plaintiff asserts claims for (1) professional negligence; (2) breach of contract; (3) fraud; (4) negligent misrepresentation; and (5) reckless misrepresentation.

## II. PROCEDURAL BACKGROUND

In December 2009, Plaintiff filed a motion to add 34 Hooters entities (including 28 Hooters restaurant or "store" limited liability companies and 6 regional holding companies) as plaintiffs. In an order filed on February 19, 2010, the Court denied Plaintiff's motion to add the 34 new plaintiffs because Plaintiff had not shown good cause for failing to comply with the Rule 16 Scheduling Order [Doc. No. 44], which provided that the deadline for filing a motion to join other parties was April 9, 2009. The Court explained:

> Plaintiff has not shown that it has acted with diligence to add the other restaurant entities as plaintiffs. To the extent these 34 other entities suffered damages separate and apart from those suffered by Plaintiff as a result of Defendant's failure to properly provide financial and accounting services, these

entities should have been included as plaintiffs from the beginning of the action.

Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. No. 108] at 5:12-16.

Subsequently, the 34 entities filed a separate action in the Central District of California. The case, LA Wings LLC, et al. v. Quatrro FPO Solutions LLC, 10cv1600 BTM(WMc), was transferred to this district and is pending before the Court.

### III. DISCUSSION

As set forth in the reports of Plaintiff's damages expert, Neill W. Freeman, Plaintiff seeks damages that include damages sustained by the 34 Hooters entities ("Hooters entities") that are not plaintiffs in this action. (Def. Exs. F, K.) Defendant contends that since Plaintiff does not own the other Hooters entities, Plaintiff cannot recover damages sustained by them. The Court disagrees. As discussed below, there is a triable issue of material fact with respect to whether Plaintiff entered into the Agreement as an agent for undisclosed principals (the 34 Hooters entities), thereby authorizing Plaintiff to sue in its own name on behalf of the principals.

A. Law Governing Agency and When an Agent Can Sue on a Contract on Behalf of Principals

Agency is "a fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). Although there must be an agreement between the principal and agent to create the agency, a contract is not necessary. A. Gay Jenson Farms Co. v. Cargill, Inc., 309 N.W.2d 285, 290 (Minn. 1981).[1]

---

[1] In the Court's Order Granting Motion for Partial Summary Judgment filed on August 10, 2009 [Doc. No. 67], the Court held that the Service Agreement's choice-of-law provision, which designated Minnesota law as governing the agreement, was enforceable.

An agency may be proved by circumstantial evidence which shows a course of dealing between the two parties. Id.

As a general rule, a principal is bound by, and is liable upon, a contract executed by his agent within the actual or apparent authority of the agent, and with the understanding that the agent is contracting on behalf of the principal. 12 Richard A. Lord, Williston on Contracts § 35:34 (4th ed. 1999). Under these circumstances, all rights and duties under the contract are the principal's and the agent cannot enforce the contract, nor is he bound by it. Id.

One exception to this general rule is when an agent acting with actual authority makes a contract on behalf of an undisclosed principal. When the third party has no notice that the agent is acting for a principal, the one for whom the agent acts is an "undisclosed principal." Restatement (Second) of Agency § 4(3) (1958). Under these circumstances, unless excluded by the contract, the principal is a party to the contract, the agent and the third party are parties to the contract, and the principal and the third party have the same rights, liabilities, and defenses against each other as if the principal made the contract personally. Restatement (Third) of Agency § 6.03(3).

The agent of an undisclosed principal may sue on the contract in the agent's own name. Restatement (Third) of Agency § 6.03(3) cmt. e. As a party to the contract, "[s]uch an agent is a proper plaintiff even though the damages were sustained by another, he claims no financial interest in the transaction or litigation, and even though he did not have title to, or more than a transient possessory or custodial interest in, the property forming the subject of the dispute." Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Auth., 528 F. Supp. 768, 776 (D. Puerto Rico, 1981).

For example, in Holliston v. Ernston, 144 N.W. 415 (Minn. 1913), the Minnesota Supreme Court held that the agent of an undisclosed principal could sue to enforce an agreement even though the agent did not have a personal interest in the transaction :

> It should be noted that we are not considering a case where one not a party to a contract claims to be interested therein and seeks an incidental benefit therefrom; for plaintiff was in terms the purchaser, and had the right to maintain this action both under Gen. St. 1913, § 7676, and generally. Dunnell's Dig. § 1895; Pom. Rem. § 175 et seq.; 31 Cyc. 1623; Mechem, Agency, § 755. We quote from the authority last cited: 'It is a general rule that

> where a contract, whether written or unwritten, is, in terms, made with the agent personally, he may sue upon it. This rule is unquestioned where the fact of the agency and the name of his principal are both concealed by the agent.'

Id. at 416.

In contrast to cases where an agent enters into a contract on behalf of an *undisclosed* principal, when an agent makes a contract on behalf of a *disclosed* principal, the principal and the third party are parties to the contract, *and the agent is not a party to the contract* unless the agent and third party agree otherwise. Restatement (Third) of Agency § 6.01. The third party has the burden of showing a manifestation of assent by the agent to such an agreement. Restatement (Third) of Agency § 6.01 cmt. d.

B. <u>Facts in This Case Regarding Agency</u>

The Agreement itself does not say anything about whether Plaintiff was entering into the contract as an agent for principals. However, there is a triable issue with respect to whether Plaintiff was in fact acting as an agent for the 34 Hooters entities.

In or before December 2005, all but five of the 34 Hooters entities entered into written services agreements with Plaintiff, whereby Plaintiff agreed to provide the entities with business services, including full service accounting services and payroll services. (Ex. 6 to Conti Decl.) All of the services agreements contain almost identical language, including the following provisions:

**ARTICLE VI**
**THIRD PARTY AGREEMENTS**

To the extent that it is not practicable to have [the Hooters entity] as the contracting Party for a third party obligation, HW [Hoot Winc], with respect to all Services supplied by HW or contracted for by HW or on behalf of [the Hooters entity], shall use commercially reasonable efforts to cause all such third party contracts to extend to and be enforceable by [the Hooters entity], or to assign such contracts to [the Hooters entity]. In the event that such contracts are not extendable or assignable, HW shall act as agent for [the Hooters entity] in the pursuit of any claims, issues, demands or actions against such third party provider at [the Hooters entity]'s expense. . . .

**ARTICLE VIII**
**AUTHORITY AS AGENT**

HW is hereby authorized to act as agent for [the Hooters entity] for the purpose of performing Services hereunder and as is necessary or desirable to perform such

Services. . . .

Based on the language of the services agreements between Plaintiff and the various Hooters entities, it appears that Plaintiff was acting as an agent for these entities when Plaintiff entered into the Agreement with Defendant. Plaintiff contracted with Defendant to provide certain financial/payroll services that fell within the scope of the business services to be provided by Plaintiff under the service agreements.

As for the five Hooters entities that did not enter into a written services agreement with Plaintiff – i.e., Rancho Bernardo Wings LLC, Temecula Wings LLC, Moreno Valley Wings LLC, Beaverton Wings LLC, Mall 205 Wings LLC, and Oregon Mike's LLC – Larry Spitcaufsky, the managing member and/or majority owner of the entities, declares that the entities authorized and consented for Plaintiff to act as their agent in the same manner as set forth in the written services agreements. (Spitcaufsky Decl. ¶ 5.) Spitcaufksy's declaration is somewhat vague as to when and how these five entities assented to Plaintiff acting as their agent. However, even if there was no prior authorization for Plaintiff to contract with Defendant on these entities' behalf, it seems that these entities may have ratified the agency relationship by not disavowing Plaintiff's conduct and acquiescing in Plaintiff providing/contracting for business services for the benefit of the entities. See 12 Richard A. Lord, Williston on Contracts § 35:22 (4th ed. 1999).

The Court concludes that there is a triable issue of material fact with respect to whether Plaintiff entered into the Agreement with Defendant as an agent for the 34 Hooters entities. The Court's analysis does not end here, however. The next question to be answered is whether Plaintiff, as an agent, could sue Defendant in its own name on behalf of the 34 Hooters entities.

Upon review of the evidence, it appears that the 34 Hooters entities may have been *undisclosed principals*, thus allowing Plaintiff to sue in its own name on behalf of them. Plaintiff, in the mistaken belief that it is furthering its position that it can sue in its own name on behalf of the Hooters entities, argues that Defendant had notice that Plaintiff was acting as an agent on behalf of the Hooters entities. However, based on the evidence in the

record, the Court cannot say that this is the case. Although Defendant clearly knew that it was providing business services to the various entities, there is no evidence that at that time, Defendant knew that Plaintiff had no ownership interest in the entities. Absent knowledge about the relationship between Plaintiff and the Hooters entities, Defendant would not necessarily have had reason to know that Plaintiff was acting as an agent for the various Hooters entities as opposed to acting under its own inherent authority.

Despite the law governing agency on behalf of undisclosed principals, which neither side addresses, Defendant argues that under the specific language of the services agreements between Plaintiff and the Hooters entities, the scope of Plaintiff's agency does not extend to suing under the Agreement on behalf of the Hooters entities. Defendant relies on the following provision in the services agreements:

> To the extent that it is not practicable to have [the Hooters entity] as the contracting Party for a third party obligation, HW [Hoot Winc], with respect to all Services supplied by HW or contracted for by HW or on behalf of [the Hooters entity], shall use commercially reasonable efforts to cause all such third party contracts to extend to and be enforceable by [the Hooters entity], or to assign such contracts to [the Hooters entity]. *In the event that such contracts are not extendable or assignable*, HW shall act as agent for [the Hooters entity] in the pursuit of any claims, issues, demands or actions against such third party provider at [the Hooters entity]'s expense. . . .

(Services Agreements, Article VI) (emphasis added). Defendant argues that Plaintiff does not have the authority to sue on behalf of the Hooters entities because the Agreement is assignable. The Agreement provides: "Client may assign this Agreement with the written consent of RSM, such consent not to be reasonably withheld." (Services Agreement, ¶ 5.1.)

The Court is not persuaded by Defendant's argument. Because Plaintiff entered into the Agreement with Defendant on behalf of multiple principals, it would not be feasible to assign the contract to all of the injured principals. Therefore, as a practical matter, the contract was not assignable to the principals in question. Furthermore, the provision quoted above does not state that Plaintiff *cannot*, under any circumstance, pursue actions on behalf of the Hooters entity in cases where the contract is extendable or assignable.

In sum, based on the record before the Court, there is a triable issue of material fact whether Plaintiff entered into the Agreement as an agent for undisclosed principals. If the

34 Hooters entities were undisclosed principals, Plaintiff can sue in it its own name for damages sustained by the 34 Hooters entities as a result of any failure by Defendant to perform under the contract. Therefore, Defendant's motion to preclude Plaintiff from seeking damages sustained by the Hooters entities is denied.

C. <u>Case Management</u>

In an apparent attempt to preserve their rights, the 34 Hooters entities have filed a separate lawsuit seeking the same damages that Plaintiff seeks in this lawsuit. That action, <u>LA Wings LLC, et al. v. Quatrro FPO Solutions LLC</u>, 10cv1600 BTM(WMc), is pending before the Court. Of course, a double recovery is not permitted. The Hooters entities must elect whether to allow Plaintiff to sue on their behalf or whether they wish to sue on the contract themselves. <u>See</u> <u>Miller v. Ziedrich</u>, 199 Or. 505, 512 (1953) (explaining that "the agent may enforce the contract, subject in most cases to a paramount right in the principal to enforce it himself if he so prefers.") If the Hooters entities choose to have Plaintiff sue on their behalf, they may file a motion to stay the <u>LA Wings</u> case pending resolution of this case. If, on the other hand, the Hooters entities choose to proceed with their own lawsuit, Plaintiff must supplement its discovery responses and damages expert reports to accurately reflect the damages suffered by Plaintiff only.

Defendant argues that if the Court allows Plaintiff to seek damages on behalf of the Hooters entities, Defendant should be provided additional time for discovery. Defendant points out that Plaintiff never pled the agency theory in any of its complaints and did not raise the issue of agency in its motion to add the 34 Hooters entities as plaintiffs. Undoubtedly, Plaintiff came to a late realization that it could raise the agency theory. However, it is unclear to the Court whether Defendant has been prejudiced by Plaintiff's tardy assertion of agency. If Defendant wishes additional discovery (including supplementation of expert reports) and/or modification of pretrial deadlines, Defendant must file a motion with Magistrate Judge McCurine requesting such relief.

///

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion for partial summary judgment precluding Plaintiff from seeking or recovering damages allegedly sustained by nonparty entities is **DENIED**. Plaintiff has not specifically pled the agency theory in its Second Amended Complaint. However, even during trial, the Court may permit the amendment of pleadings to conform to the evidence. Fed. R. Civ. P. 15(b). Therefore, the Court grants Plaintiff leave to file a Third Amended Complaint which pleads the agency theory of liability. The Third Amended Complaint must be filed within 20 days of the entry of this Order.

**IT IS SO ORDERED.**

DATED: February 22, 2011

Honorable Barry Ted Moskowitz
United States District Judge